The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you, Mr. Clerk. Good morning, everyone. This case is People v. Mariani, or perhaps Mariani. Anyway, it's case number 4190417. Counselor for the appellate, please state your name. Thank you. My name is Brian McIntyre. I'm with the Office of the State Appellate Defender. On behalf of the appellant, Blake Mariani. Thank you, Mr. McIntyre. And for the appellee? Your Honor, Ben Sardino is representing the state. Thank you. Mr. McIntyre, you may proceed. Thank you, Your Honor. May it please the Court, Counsel. I'd like to skip around a little bit today. In reference to my brief, I'll start with then I'd like to talk about why it's so important that evidence of limited admissibility as to possible intent to deliver be subject to a limiting instruction. And I'd like to come back to Argument 1 and talk about the crime that actually resulted, what was proven, and why it's important to prove that separate pieces of drugs, insular drugs, are sufficiently homogenous to try to rely on sampling only one piece. As to the remainder, the portion of Argument 2 that survives Burge, and the remainder of Arguments 1 and 3, I would rest on my brief. So it's important to keep in mind in this case that Blake Mariani and Jerrick Camp were heroin addicts. They lived with their heroin dealer, Michael Turner. And Mr. Turner called all the shots. He never asked for input. He never asked someone else what they thought about something. He simply told them what to do. And in fact, Jerrick Camp says that Michael Turner would either give them small amounts of heroin to fight off their cravings if they did as they were told, or he would threaten the lives of the men and their families if they were to refuse him. So there's evidence that Blake Mariani had participated in smaller drug transactions before April 4th of 2018 on behalf of Michael Turner. And of course, the transactions he But on April 4th, 2018, Blake Mariani wakes up to find Michael Turner and Jerrick Camp gone about one o'clock in the morning. They get back about five o'clock in the morning before the sun is up. And within minutes of their return to the home, police enter and arrest everyone. Now, although Jerrick Camp testifies under an informant agreement or under an agreement to be truthful as plea agreement, the state never attempts to show that Blake in any way participated in the acquisition of these drugs on April 4th of this specific unit of drugs. Now, this is not the same as specific intent. At issue here is not whether Blake intended the actual crime that resulted. It's whether he participated at all in this course of criminal And it's not propensity. It's not whether Blake had committed crimes like this before. It's not guilt by association. It's not whether he had committed crimes like this before with the same people. It's whether he participated in these criminal acts. As we see back in Kessler in the 1970s, all the way up to people be Fernandez, the 2014 Illinois Supreme Court case, we see that what actually is at issue here, I want to quote from Fernandez in paragraph 18, as Kessler clearly establishes section 5-2C means that where one aids another in the planning or commission of an offense, that person is legally accountable for the conduct of the person he aids and that the word conduct encompasses any criminal act done in furtherance of the planned and not to a propensity for crime or associating with criminals, but to going along with a specific course of conduct. Mr. McIntyre, may I interrupt you for a moment? Earlier, you were talking about defendants involvement with Turner's operation. And I think you were describing it as he defendant would assist in some of the smaller transactions, the buys, but isn't it also true defendant on occasion would accompany Turner on buying trips in Chicago where the larger amounts of heroin were purchased? Yes, your honor. And for any of the trips where he went along, where he participated, he would be guilty, but he wasn't charged with those. He was charged with the substance that Turner had just purchased on April 4th of 2018. And that's really- And I'm sorry, again, isn't that though evidence of this criminal enterprise that Turner was engaged in? And isn't it evidence under the accountability theory of defendant's participation in that enterprise? Your honor, no, I don't believe it is. And the reason for that is that knowledge that a crime is ongoing, being present at the scene of a crime, those aren't enough. What matters is, again, participation. The Illinois Supreme Court in Fernandez had the part I quoted a moment ago. In People v. Perez in the year 2000, on page 268, they say accountability focuses on the degree of culpability of the offender and seeks to deter persons from intentionally aiding or encouraging the commission of offenses. And the problem here is that the argument essentially is that Blake might have been willing to participate if he had had the opportunity, and he might. But that is a propensity argument. That's this person engages in this type of crime, so they would have engaged in this crime too if they had the chance. But the evidence in this case shows that the crime he's charged with, not a drug conspiracy, not an ongoing criminal enterprise, but the possession of this specific substance that was of 2018. He never participated in any of the acts that resulted in the possession of that substance. He didn't get in the car. Turner never told him, hey, Blake, go put gas in the car so I can make my appointment in Chicago. And it wouldn't matter if Blake thought a different crime was going to be committed, and he went along. What matters is that he goes along knowing a crime will be committed. But here- Well, let me just suggest a hypothetical. It's not this case, obviously. Let's say that a defendant accompanies Turner every day to Chicago to purchase heroin that later in the day, they then sell in the community. And then the same thing happens the next day and the next day. And this happens daily. However, on the day of the police involvement, defendant happens to be sick and doesn't accompany Turner on the buying trip to Chicago. So you're saying that it doesn't matter that every previous day, every previous transaction, where large amounts of heroin are purchased and then sold, the fact that defendant didn't accompany Turner on that occasion, after which the police arrest Turner, defendant cannot be held accountable for the crime of possession with intent to deliver. Your Honor, I believe that's accurate, that the defendant would not be accountable for the crime he did not take part in, only the crimes he did. Now, I would note that what the court is describing sounds like a criminal drug conspiracy. It sounds like an ongoing agreement that would be charged and proven as a conspiracy. But People v. Stroner, Illinois Supreme Court 1983 lays out very clearly the distinction between conspiracy and accountability. And conspiracy requires proof of that ongoing agreement. And that's what I believe the court is talking about. Every day they go and they do the same thing. Well, actually, People v. Fernandez, when it's talking about the Illinois accountability statute, indicates that there are two ways in which accountability can be established. And it's either that the defendant shared the criminal intent of the principal, or that there was a common criminal design. So wouldn't it be evidence of a common criminal design? No, Your Honor, because also in People v. Fernandez, as in Kessler, they talk about common criminal design as in the intent to participate in a specific criminal activity. Now, you don't need to know what crime is going to ensue. In Kessler, which Fernandez refers back to, the act that rendered the defendant liable was that he went along on a burglary. Now, he stayed in the car. He didn't participate in the burglary of the store or in the co-conspirators attempt to shoot at the store owner. But because he went along for the burglary, he was guilty for everything that happened in the course of the burglary. In Fernandez, and I believe in Jackson, it was going along the act that he agrees to or participates in is going along to hurt someone. And by going along to hurt someone, everything that happens in the course of that criminal conduct, he's liable for. But in each case, dealing with accountability, they tie it to an act that the defendant agreed to do, or something showing that the defendant agreed to engage in this pattern of cannot be guilt by association, and it cannot be guilt by propensity. If you have a group of burglars who don't really coordinate, but every once in a while, they ask each other for help. They'll each be accountable for the crimes they go along on, but they're not accountable for the crimes of the other burglars that they're never involved in. And that's a very important distinction, that participation distinction. And I think, Your Honor, that's why it's so important that when this evidence of other crimes comes in, this evidence where Jarek Kemp says, oh, yeah, I've seen Blake sell drugs to people before. I've seen him take drugs to people for Michael Turner, where we have the evidence coming in through the detective that Blake admitted that on previous occasions, he had, in fact, participated in drug transactions. It's so important that that be limited to the intent to sell drugs. So under accountability, you must personally possess any requisite intent. In this case, they had to prove that Blake had the intent to sell drugs, and he was accountable for the actions of one who had possessed them. And so for the purpose of proving that he would have had the intent to sell drugs if he had known about them, absolutely, those other crimes could come in, but only for that limited purpose. Unfortunately, what we have here is we have the prosecutor arguing that based on Blake's activities leading up to April 4th of 2018, he must be guilty for the new criminal behavior on April 4th of 2018. And that's really where it crosses the line. And again, Your Honor, it's important to remember that he wasn't charged. Blake was not charged with a criminal conspiracy, either a simple conspiracy or a three-person drug conspiracy. If he had been, we might be dealing with a different case. But where we are here, we have the prosecutor arguing that this evidence of other crimes, this evidence that Jarek Kemp pled guilty to a different offense of a smaller drug transaction at some time before April 4th, that must prove Blake is guilty of the charged offense. His guilt for prior crimes, as we see in the propensity cases, it's not that it's not probative, it's that it's too probative of the wrong fact. It may show that Blake had engaged in criminal behavior, even similar criminal behavior, but not this criminal behavior. Even if the court were to find, though, that Blake were accountable for actions he never participated in, there's still the fact that he would only be liable, only be responsible for the crime that results. And the crime that results here is apparently the possession of any amount of heroin. Because Joni Little, the forensic scientist, says she got a package of brown chunks. It wasn't one chunk. They were definitely different chunks, or she would have said chunk. But she doesn't actually remember what they looked like, just that she took one sample and subjected it to conclusive testing. She doesn't know what she took the sample from, the weight of anything that was conclusively tested for heroin, just that there were a bunch of brown chunks in a package. And once again, we have that same problem, where both Joni Little and the prosecutor say, well, because they were in the same package, they have to be the same substance. And the state argues this on appeal. But it's not true. Distinct samples within the same package, as we see in people via DARE, are not necessarily the same substance, unless there's some evidence that they were sufficiently homogenous. Not just that they were brown in chunks, but that they were brown chunks of a similar color and consistency. Or, as Joni Little tries to interpret her note, she says, I don't remember what they actually looked like. But based on my notes, it was definitely more than one chunk. It was probably torn up a bit into powdery pieces. Now, if that were Mr. McIntyre, so People's Exhibit 2, that represents the photograph of the drugs as they were found in the bedroom at the home. And so in looking at that, I mean, it's a pretty good picture. You see that there are multiple chunks, but they're all together, and they're not separate in like little small bags within this bigger bag. You just have one bag, and they're all squished together, and it's tied on the top. I mean, what is there to indicate? I mean, they all look the same. What is there to indicate that the chunks might be different? Well, Your Honor. They look pretty homogenous to me. I understand that. And I would point out that, at least based on my recollection of the exhibit, we don't have a straight view of the suspected heroin. It's inside a package. It's inside a clear plastic bag. I mean, I'm looking at People's Exhibit 2 now on my other screen, and it's in a clear bag. And Your Honor, I think the real issue here is that the jury was never asked to make that conclusion. If it had been argued, you can see by the exhibit that they're homogenous. Maybe that would be the basis for the jury's conclusion. But in fact, what's argued by the prosecutor is that they don't have to prove that the whole bag, that everything in the bag is that substance, just that there was heroin in the bag. And we have Joanie Little saying, just because it's in the same bag, it has to be the same substance. And as we see in People v. Adair, that's not true, that we would need more testimony, that it bore characteristics that made it, again, the same texture, that it appeared to come from the same source. And we simply don't have that here. It's that lack of evidence that's problematic, again, as it was in Adair. And in Adair, they also said that just because the item had commingled and begun to disintegrate prior to testing, that doesn't necessarily mean it's the same substance. So I apologize, Your Honor. So in recap, we have the key problem here is that Blake never actually participates in the purchase of these drugs. He doesn't get in the car. He doesn't do anything to facilitate Turner's acquisition of the drugs in question. So that he can't be responsible for whatever crime resulted, whether it's the possession of some amount of heroin or more than 15 grams of heroin. Again, Your Honors, I would rely on my brief for the remaining arguments. Are there any questions? I'm sorry, did you have a question, Justice Harris? No. Okay. Seeing none, you'll have rebuttal. Your Honor, if I might wrap up, I apologize for speaking over you. Okay. For those reasons, I would ask that because of the insufficient proof of accountability and of the weight of the substance, that Blake Mariani's conviction be conversed, or sorry, be reversed, or in the alternative, that it be reduced to any amount of a controlled substance. And in relation to argument three, if the court finds that there could have been enough evidence to support his guilt, but that the evidence here was close, and given the arguments, taking that evidence a step too far, we would ask that a new fair trial result. And I would close. Thank you. Okay. Thank you. For the people, please. Good morning, Your Honors. May it please the court, counsel. Ben Sardinia, again, representing the state. I'll begin in the same fashion the defendant began, which is to address the nature of the crime that was charged here. And the nature of the crime charged here was the possession of the 21.3 grams of heroin. And the state advanced two separate theories to explain why the defendant was legally culpable for possession of those drugs, the first being constructed possession and the second being accountability. And in one aspect, they kind of tie together because the nature of the agreement helps show that what defendant contended at the time that he was arrested and the statements that he made to police were just completely unbelievable. Because both camp and the defendant admit that there was an ongoing agreement for three months prior to the raid on the house, that defendant would assist Turner in selling drugs. And from camp's testimony, we have evidence that immediately upon returning to the house, defendant and Turner would go into Turner's room and package drugs on a regular basis for sale. And the defendant would give drugs to camp to sell on behalf of Turner. What we have here is evidence of an incredibly specific agreement between the defendant and Turner to sell drugs. And it's kind of amusing that to hear defendants synthesis of this as somehow a nebulous in his reply brief, because I mean, in my short experience at the state appellate prosecutor's office, this is one of the most copious evidence of an agreement between parties that I've ever seen, because both one of the accomplices and the defendant himself both lay out the nature of this agreement. They go to Chicago on a regular basis to purchase large amounts of heroin. When they return, defendant goes and helps Turner purchase that, or sorry, break that down into sellable amounts and then assist him in selling those amounts. We have a three-month course of conduct in which defendant knows that they go weekly. This is defendant's words, weekly to Chicago to purchase drugs and to then sell, to package it and then sell it to other people. It is incredibly unbelievable, at least for the constructive possession element of this, the defendant wasn't aware that they were going to purchase drugs. And the trier of fact could look at this long course of evidence, both under the accountability theory, because that allows entrance of it for the purposes of proving the nature of the agreement, and see that defendant had been purchasing drugs for weeks, for months, and assisting defendant Turner in selling those drugs and packaging them and therefore exercise control over those drugs because of the evidence that was proven at trial and what defendant's own statements were about the nature of their agreement. So the notion that the trier of fact simply accepted that these drugs were only in Turner's room and that defendant had no knowledge that they were going to go purchase them is just simply unbelievable based on the nature of how their course of conduct happened for three months prior. But even if this court rejects the notion that the trier of fact made those inferences based on the course of conduct and the facts that were in the case, the state proved under accountability that the defendant was liable for the purchase of those drugs. And I think that this court's precedent and the Supreme Court's precedent has both laid out. When a person agrees and becomes part of a criminal conspiracy, he is liable for all actions that are made in furtherance of that conspiracy. And here we have an incredibly specific conspiracy, and one that was going on for three months prior and an agreement that to sell drugs on a regular basis, and defendant is therefore liable for any of the criminal actions that are taken. Counsel, could I interrupt just a second? Absolutely. I think Mr. McIntyre's arguing that he very well may have been guilty, his client, under a conspiracy theory, but he wasn't charged under a conspiracy theory. He was charged under an accountability theory. And he says that the Supreme Court has explained that there's a difference in those two. What's your response to that? Your Honor, there is a difference because the intent requirement for a conspiracy is, excuse me, there's a difference between the two in the level of proof that one has to show for a conspiracy, but, and, excuse me, Your Honors. I'm sorry, your question was about the difference between the conspiracy and accountability. Well, because, Your Honor, in a conspiracy, one has to prove the nature of the agreement to commit an offense, but whereas in a common design, one has to prove that there was an object to the offense, that one has to prove the underlying agreement to commit the actual offense, and the underlying offenses was charged. So there's an additional element to the underlying charge carries a burden of proof with it that one has actually committed that. An agreement by itself is criminal when one agrees to join a conspiracy, but obviously we have to prove the action of the underlying offense to prove that someone is accountable for the other person's offense. There's an additional crime that needs to be proven under the accountability theory that doesn't exist with conspiracy because in conspiracy, the agreement itself is the criminal act. That's the way that I would distinguish the two. And that might be my misunderstanding of the court's precedent on that, but that's at least my understanding of the difference between the common design element is that you have to prove the underlying offense that the common design was aimed to do, and that therefore, additionally, any acts that were committed in furtherance of that are also liable and imputed to everyone else under the accountability theory. Well, so just taking common design then as the legal analysis, what acts here then constitute proof of the common design or the specific heroin that was purchased by Turner that the police recovered? I think, Your Honor, that the nature of the agreement itself and the fact that it was implausible that defendant wasn't aware that these weekly drug purchases that were going on all in furtherance of the agreement, that this particular set of drugs wasn't, that defendant had no knowledge that this was going to be purchased in furtherance of that is unbelievable. But even attended that, I believe, Your Honors, that the minute that he signs on to an ongoing agreement to continue to sell drugs, every purchase of drugs, every criminal act that's done in furtherance of that is imputed to him regardless of whether or not he has knowledge of that. And I believe that that is reasonable under this court statement in Fernandez and in this court statements in the recent Jackson case that I worked on, that once you sign on to the agreement and the scope of the agreement in this case is odd, I grant you, because it's an ongoing and vast one and one where there's regular purchases being made, any criminal act made in furtherance of that until the end of the agreement is something that's imputable to everyone in the common design. So- What is the importance or is it important that there is a similarity between what has occurred previously in the criminal operation and what happened on the day that the police recovered the heroin? In other words, it appears that it followed the exact same pattern. But what if instead Turner had brought back cocaine or amphetamines instead of heroin? Would that have impacted then the ability of the state to approve defendant's liability for intent or possession with intent to deliver because it was a different drug? Your Honor, I was I was thinking about this yesterday, in all honesty, and what my thought would be would be defendant's argument would then have to be that the scope of the criminal agreement was to purchase heroin specifically and that therefore because there is a rule that obviously actions that are accountable that other people are accountable for within a common design have to be in furtherance of the agreement. And you would have to argue that the agreement's scope is such that it only included heroin and that therefore that action of purchasing another drug went outside the scope of that agreement and that therefore it's sufficiently attenuated to the nature of the agreement itself and that therefore he couldn't be held accountable for that. But I think the difficulty with that argument is that we see cases in multiple instances that this court has dealt with, with violent crimes, with robberies, where people show up with guns and the defendant says, I have no idea that this person had a gun and they get charged with possession. And this court says, well, possession of that gun was meant in furtherance of whatever robbery or violent act was supposed to be committed or intimidation. And I'm sorry, defendant, but that's just the nature of the common design rule. You are accountable for any criminal act that's done in furtherance of the conspiracy. And if you didn't want to be held accountable for the actions of other criminals, you shouldn't have signed on to a criminal agreement. And that's the whole purpose of the accountability rules to stop people from saying, well, you know, I had no knowledge of that. It was like, well, the point of the rule is to disincentivize people from agreeing to join criminal organizations and make agreements with other criminals to commit criminal acts. What I think we have instead of this very regular, it appearing very regular kind of sequence where the Turner and defendant in camp would go to Chicago and buy heroin and then bring it back and sell it. Instead of that, you have a much more sporadic kind of conduct where, you know, maybe every couple of months or, you know, one month and then three months pass. And maybe on this occasion, four months had passed since the last trip up to Chicago. I mean, does the regularity of what had preceded the specific purchase and possession have a bearing on whether or not the state should be able to prove the defendant liable under an accountability theory here? And the hypothetical I gave, what if there had been a period of months that had passed between the time that defendant had last gone to Chicago to help Turner and when Turner actually brought back heroin that the police uncovered? Your Honor, I don't mean to be overly granular about your example. So the reason that I'm reticent to say that, well, let me answer first. I think that if there were evidence that this agreement was still ongoing at the time that you were saying, so there's multiple months in each of the purchases. If defendant, like we had in this case, had said something like, yeah, no, we had an ongoing agreement. Whenever he called me, it might've been like one month, it might've been three months, it might've been six months. I would go help him sell drugs. Then I think that the regularity of the event would, the irregularity of it would not bear on his liability for other criminal acts done in furtherance to that because he's still signed the ongoing criminal enterprise. What I would say, Your Honor, is that if we didn't have that testimony, if it was just a straight hypothetical, I think it would then become an issue for the trier of fact to say, well, these purchases weren't regular. He wasn't part of this agreement because he hadn't done a drug sale for the defendant or for the other party in six months. And I think the trier of fact could look at that and evaluate one way or the other, whether or not they believed that he was still part of the design or not at that point. But I think that that example is hard to square with this case because there's just so much evidence that this agreement was ongoing, that it was regular. The defendant specifically said that it was done weekly. And the notion that he wasn't aware that these drugs were being purchased that day is simply unbelievable. But even assuming that for the purposes of accountability, it doesn't matter because he signed onto this agreement that is perpetual. He hasn't asked to withdraw it. There's no evidence that he attempted to withdraw himself from the agreement. And there's a section of the code that I could provide that discusses when someone is allowed to withdraw from or when someone withdraws from an agreement such that he is no longer accountable for other actors within the agreement committing criminal acts in furtherance of that agreement. But there's no evidence of that at all here. What we have is someone who was probably going to assist and help, as he had done in the past multiple times, package those drugs. And that's the testimony that we have from CAMP about the regularity and the nature of the agreement and the operation between defendant and Turner in this case. Mr. Sardinas, opposing counsel speaks to the fact that they take the position that the evidence regarding the defendant's prior involvement with deliveries or picking up drugs in Chicago, that that should have been an important part of the puzzle here, because I'm wondering, what was the jury allowed to consider that evidence for? And are there inferences to be drawn from that evidence that would lead the jury to find that there was a criminal enterprise here? Your Honor, I think as I lay out in the brief, I think it is impossible for you to draw a distinct, not you specifically, but any lawyer or any lay person reviewing this evidence, to draw a distinction between showing this evidence for the purposes of proving the nature of the agreement and considering it for that purpose and not considering it for defendant's guilt, because they're tied together. Defendant being part of the agreement is what establishes his criminal liability for the possession of the drugs in this case, in addition to the fact that obviously we contest the idea that he didn't know that the drugs were there based on the nature of this agreement and the course of conduct. But considering those two pieces of that piece of evidence, defendant's previous actions and the existence of an agreement with camp, separately from his guilt by accountability, I think it is just impossible. There's no daylight between those two concepts, because the nature of the agreement is what causes defendant to be criminally liable under one of the theories the states advance. So, I mean, I would challenge the other side to explain where the daylight is those two concepts, because I don't see any. I think it's impossible to draw that kind of distinction. If the state has no further questions about that particular element of the state's proof, I'll just move on quickly to the drugs in the case, which is to simply say that, as your honor alluded to, both the picture itself and the testimony both establish that this is one contiguous unit. I'd like to point out a factual error that defendant makes in saying that only one of the substances was tested. There were several representative samples that were taken that were not conclusively tested, but that did show presumptive positive for heroin. This, contrary to defendant's statement, the prosecutor didn't just say rely on Little's testimony. If you look at pages 298 and 299 of the record, he specifically refers to the picture itself and says, you can see the picture. It's a clear, it's one substance, it's one unit, and that was tested and it's shown positive conclusively for heroin. So the notion that the testimony was somehow unclear about the nature of the drugs that were seized in question and whether or not they tested positive and whether or not they're a representative sample is, I think, pretty clear. I think the statements, this court's statements, as well, about the nature of things found in one bag is also very illustrative. I believe defendant's case, Adler, dealt with multiple pills that were in one contained bag and then some pills had disintegrated and there were different colors. Yes, so I think that there there's a distinction because there's differences between the various elements contained in the bag and that, I think, fits into the distinction that this court made when I discussed the one container idea, which is that, well, if there's additional evidence that shows that there's differences between the that's something that the court has to take into account and the trier of fact has to take into account for whether or not there's been enough proof shown that all of the substance contains the same thing and that, therefore, I think that that's easily distinguishable in this case. Regarding issue two in this case, regarding, as this court's aware, the Supreme Court in errors that involve commingling of the various principles in rule 431b, as to the hands part, we would rest on our brief, raising, raising the hands is correct, we would rest on our brief in our argument regarding the plain error nature of that decision and that, and we would implore this court to kind of make a more, a very aggressive statement that if someone comes to an appellate court and asks for a change in the law, that can never establish plain error simply because a plain error is one that's established on well-settled law at the time of trial and here, clearly, this court has made statements that would show trial courts that that particular method of inquiring into the juror's acceptance and understanding of those principles is fine and that it would be unfair to trial courts to establish that there was a clear and obvious error when the fourth has made, the appellate court has made statements that that procedure is fine. And then I'll quickly just touch on issue three in this case, there's a lot of statements made here regarding, well, the three sets of statements, the camp's testimony, the defendant's previous drug history, and the officer's testimony, we would simply rest on the argument that we made before that all of these elements prove accountability and there can't be a distinction between the two, between the accountability that defendant, that establishes criminal liability and considering it for the other purpose and that there's no difference. And again, I would challenge defendant to kind of draw the daylight between those two concepts because I don't think that there's any way that one could consider this evidence separate from his guilt if under the accountability theory, because of the previous incidents of his drug use and the nature of the agreement itself. So if the court has no further questions, we would ask that you would affirm. Okay, thank you. I don't see any further questions. Mr. McIntyre, do you have any rebuttal? Yes, Your Honor. First, I'd like to answer that challenge. I want to point out that, first of all, with regard to conspiracy and accountability, I want to go back to that quote from Stroner I was referencing. 1983, people be Stroner. This is, uh, says the, sorry, page 211, the intent element in conspiracy and attempted and in accountability is the same. The former requires an agreement and an overt act in furtherance. The latter requires that one of the co-felons perform an act, which is a substantial step toward the commission of murder. And the defendant have either solicited, aided, abetted, agreed, or attempted to aid his co-felon. Aiding or abetting commission of a substantive offense is a crime different from conspiracy to commit the same substantive offense. And I think it's telling that the state's argument keeps going back to because accountability and conspiracy, as we've talked about, are two different things. In conspiracy, you prove an agreement. In accountability, you prove participation. And that's, I think, part of where the daylight comes in. In accountability cases, if someone were along for the ride and claimed that they didn't know a crime were going to take place, that's where knowledge of those prior offenses, that's where evidence of prior offenses comes in to say, no, you've engaged in the same kind of crime with these same people repeatedly. When you got in the car to go to Chicago, you knew you were going there to commit a crime. Therefore, you can't claim the absence of criminal mind, which again is what I talk about in argument three. That's the daylight. This is what the state's really arguing is that if it were proved that Blake were awake and aware of what was going on, and he tried to claim that he was innocent, that he didn't have any part in it, then they could bring in this evidence that he committed similar crimes in the past to rebut that claim. But the evidence here, which by the way, is all the state's evidence, says that Blake was asleep at one o'clock in the morning. He's woken up by somebody at the door. And then before the sun comes up at five o'clock in the morning, Michael Turner and Jarrett Camp come into the house and within minutes are arrested. Now, the state argues that the jury could have simply disbelieved the state's evidence that Blake was asleep. But the about whether Blake was involved in this offense, was Blake awake? Did he go with you? Did he know you were going to go? They don't attempt to rebut the evidence that they themselves present, showing that Blake was not aware of this offense. So it very much shifts the burden. It strains credibility in my perception to say that the jury could simply have disregarded the state's evidence when if the state had evidence to rebut it, they had the opportunity to present that. So again, I think the daylight comes in by the distinction between the prosecutor's direct claim that Blake's activities leading up to April 4th rendered him guilty and this idea that to rebut an innocent frame of mind, evidence of the priors could have come in. I would also note, excuse me, that Jarrett Camp repeatedly said that he assumed what was happening in Michael Turner's room. He never said he witnessed Blake Mariani breaking things down. Now, I know that's sort of a side issue, but again, what we're relying on here is speculation, circumstantial evidence purely, and specifically based on prior criminal activity rather than the crime with which he's charged. And I agree with counsel that in a conspiracy, the agreement itself is the criminal act, but that is the exact distinction why accountability doesn't apply. I would also say that in the conclusive testing cases, they say that preliminary testing is insufficient, that when something is in one container, if the state proves that it's sufficiently homogenous in a dare, they say that if the state presents detailed testimony that each pill had the same type of stamp that appeared to be manufactured in the same batch, then perhaps that would be enough. But it's not the defendant's to prove they're homogenous. So just arguing that even though the jury was never told they needed to consider that, they must have considered it and ruled correctly, it does strain credibility. Your honors, I am about out of time. I don't believe I have anything else. Do we have any questions? I see no questions. Thank you for your argument. Also, thank you, Mr. Sardinus, for your argument. The case is submitted and the court will stand in recess.